[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 28, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-14749

_____

D. C. Docket No. CV-02-PT-01828-M

EVER HIGGINS,

                                        Plaintiff-Appellant,

versus

TYSON FOODS, INC.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 28, 2006)

**ON REMAND FROM THE
UNITED STATES SUPREME COURT**

Before BIRCH, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Ever Higgins brought this action based upon the failure of her supervisors at Tyson Foods to promote her to the position of Oxford Complex HR Manager. The district court granted summary judgment to the defendant and entered a lengthy and detailed Memorandum Opinion. We affirmed based upon that order of September 2, 2004.

At the time of considering the defendant's motion for summary judgment, the case had been reduced somewhat. As set forth by the district court, the following claims had been conceded by the plaintiff: (1) Intentional infliction of emotional distress; (2) Negligent hiring; (3) Conversion; (4) Wilful misrepresentations; (5) Fraud in the inducement; (6) Breach of contract; and (7) Breach of implied covenant of good faith and fair dealing. What remained to be considered were race and age discrimination claims related to the Oxford Complex HR Manager position, plus disparate impact claims. In analyzing these claims and the legal requirements imposed upon the plaintiff the district court applied our existing precedent that required evidence that the disparity in qualifications is "so apparent as virtually to jump off the page and slap you in the face" citing Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 (11th Cir. 2001). For the discrepancies to "jump off the page and slap you in the face" the district court determined that they must be of such weight and significance that no reasonable person could have chosen the other candidate over the

2

plaintiff. This was based upon <u>Lee v. GTE Florida, Inc.</u>, 226 F.3d 1249 (11th Cir.

2000). The district court concluded that this case is "the mirror image of <u>Lee</u> and

<u>Cofield</u>."

On February 27, 2006, the Supreme Court entered the following order:

The petition for a writ of certiorari is granted. The judgment is vacated
and the case is remanded to the United States Court of Appeals for the
Eleventh Circuit, for further consideration in light of <u>Ash v. Tyson
Foods, Inc.</u>, 546 U.S. _____ (2006).

In <u>Ash</u> the Supreme Court held that our test, as set forth in <u>Cofield</u>, is

"unhelpful and imprecise" as an elaboration of the standard for inferring pretext from

superior qualifications. While not articulating the standard to be used, the Court

made reference to a series of opinions expressing the test differently. These include

<u>Cooper v. SouthernCo.</u>, 390 F.3d 695 (CA11 2004) (noting that "disparities in

qualifications must be of such weight and significance that no reasonable person, in

the exercise of impartial judgment, could have chosen the candidate selected over the

plaintiff for the job in question"); <u>Raad v. Fairbanks North Star Borough School

Dist.</u>, 323 F.3d 1185, 1194 (CA9 2003) (holding that qualifications evidence standing

alone may establish pretext where the plaintiff's qualifications are "clearly superior"

to those of the selected applicant); and <u>Aka v. Washington Hospital Center</u>, 332 U.S.

App. D.C. 256, 156 F.3d 1284, 1294 (CADA 1998) (en banc) (concluding the

factfinder may infer pretext if a "reasonable employer would have found the plaintiff to be significantly better qualified for the job").

Since Ash our Court has used the Cooper test. See, e.g., Brooks v. County Commission of Jefferson County, Al., 446 F.3d 1160 (11th Cir. 2006); Watkins v. City of Huntsville, (No. 04-15607) (11th Cir. Apr. 18, 2006); Roper v. City of Foley Police Dept., (No. 05-15199) (11th Cir. Apr. 18, 2006); Price v. M.&H. Valve Co., (No. 05-15205) (11th Cir. Apr. 7, 2006). This has been most recently discussed in Ash v. Tyson Foods, Inc., (No. 04-11695) (Aug. 2, 2006) which is our Court's opinion following the remand from the Supreme Court . In sum, the test is whether the disparities in qualifications are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.

After a careful review of the record in this matter, we are convinced that the district court applied the correct test as outlined above. The district court equated the language of "jump off the page and slap you in the face" with requiring the plaintiff to establish that any disparity between her qualifications and the qualifications of Carter and Burdick were so great that no reasonable person would have selected either Carter or Burdick over her. After a painstaking analysis of the entire

4

procedural history, including that of a special review panel, the district court concluded that the plaintiff has simply failed to meet that test. We agree.

A good summary of this history is reflected in a portion of the district court's order:

> Based on all of the information he had collected at the time of his decision, Pittard determined that Carter, an African-American, was the most qualified for the position in Oxford. Pittard based his decision on the facts that: Carter had a college degree; was bilingual; had great successes in her current plant; had high references; was willing to relocate; exhibited a high degree of enthusiasm and motivation for the job; and interviewed extremely well. During her interview Carter gave specific answers to Pittard's questions and gave descriptions of programs that she initiated in her then current role as Plant HR Manager. Pittard also felt that Carter was innovative because she developed solutions to thorough problems.
>
> When Carter turned down the position, Pittard determined that the next qualified candidate was Burdick because she: was successful in her job; had a good track record; had a high degree of enthusiasm about the job; had a college degree; was heavily involved in the community and willing to do more; and was given high marks by all her references.
>
> An independent review panel at Tyson revisited the promotion decision and also determined that Burdick was more qualified than plaintiff for the position. Higgins, Hithon and Burdick all interviewed with the panel, and were asked questions designed by the consulting firm to elicit the candidates' assessments of their own competence in the areas of intellectual, personal, interpersonal, management, leadership, and motivational. Each interview lasted approximately three and a half hours and each candidate was asked the same questions. Each panelist was also given a copy of the candidates' resumes to review before their interviews.

Before the interviews began, the panel was informed that it was to make the best selection for the position and that whomever the panel selected would be placed in the position. The panel was told that their job was to "second-interview these individuals as if this position had never been filled." At the end of each candidate's interview, the panel reviewed their opinions of the candidate's strengths and weaknesses. After the interviews, each panelist ranked the candidates in the following manner:

| Mantooth | Roles | Eggman | Parks |
|----------|-------|--------|-------|
| 1. Burdick | 1. Burdick | 1. Burdick | 1. Higgins |
| 2. Higgins | 2. Higgins | 2. Higgins | 2. Burdick |
| 3. Hithon | 3. Hithon | 3. Hithon | 3. Hithon |

Three of the four panelists determined that Burdick was the most qualified candidate for the position. The fourth panelist, Parks, determined that Higgins and Burdick were equally qualified, but that Higgins should receive the promotion because of her seniority. The panel ultimately recommended that Burdick was "the candidate who best fits the Oxford Complex HRM position."

Burdick has been employed by Tyson in a personnel function since June 1992. (footnotes omitted).

Higgins v. Tyson Foods, Inc., mem. op. At 71, 72 (N.D. AL. Sept. 2, 2004).

After considering all of the evidence presented, the district court concluded:

Plaintiff's argument is in essence that, since she had seniority, she was entitled to the job. That is not the measure. There is no direct evidence of discrimination as to age or race. Assuming without deciding, that plaintiff has proved a prima facie case, defendant has articulated that it determined Burdick to be better qualified after a considered evaluation which applied reasonable criteria similar to that in Lee. 226 F.3d at 1252. The initial evaluation was confirmed by an independent review. Plaintiff has not presented sufficient evidence to establish pretext. (footnote omitted).

Id. at 83, 84.

6

In deciding what the appropriate test should be, we note the following observation by the district court:

> Other circuits have more clearly articulated the evidentiary burden a plaintiff must meet in order to prove pretext by showing she was substantially more qualified than the person promoted. See Fulton County, 207 F.3d at 1340. In Deines, for example, the Fifth Circuit affirmed the district court's instruction to the jury stating that "disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." 164 F.3d at 280. The court explained that the phrase "jump off the page and slap [you] in the face" ...should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question. This evidentiary standard does not alter the plaintiff's evidentiary burden to prove the fact of intentional discrimination by a preponderance of the evidence. Instead, the standard only describes the character of this particular type of evidence that will be probative of that ultimate fact. Id. At 280-81. (footnote omitted).

Id. at 85, 86.

The sole issue before us at this point is the legal test the district court used in granting summary judgment in favor of Tyson Foods. We are satisfied that the court used the correct test as set forth in Cooper. Although reference was made to the language found to be "unhelpful and imprecise" by the Supreme Court, the district court clearly equated this to mean that the "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial

7

judgment, could have chosen the candidate selected over the plaintiff for the job in question." Consequently, we again affirm the ruling of the district court.

AFFIRMED.