NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0148n.06

No. 21-5620

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ERIC ANDERSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| TARGET STORES, INC., | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

FILED
Apr 07, 2022
DEBORAH S. HUNT, Clerk

BEFORE:     BATCHELDER, NALBANDIAN, and READLER, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**

Eric Anderson worked for a Target Stores, Inc. department store in Tennessee. Citing fraudulent time-keeping practices, Target terminated his employment. Anderson sued Target in federal court, claiming gender, race, and age discrimination under Title VII and the ADEA. The district court granted summary judgment to Target. We AFFIRM.

**I.**

Eric Anderson is a 62-year-old African American male. In 2004, Anderson began working at a Target store as a Sales Floor Team Lead. In 2008, Anderson earned a promotion to Senior Team Leader. Anderson oversaw the Produce Department and led a team of approximately 15 Target employees. In 2016, Diana Morella, a Caucasian female, was Anderson's direct supervisor. During that year, as Anderson and another employee tell it, Morella told Anderson of the "horror that she would feel if one of her daughters dated a black male." In 2017, Morella said that several

employees began to complain to her about Anderson's prolonged lunch and rest breaks, but Morella did not investigate these complaints. Morella supervised Anderson until 2018, when she moved into a position with Target's Human Resources Department. Anderson never received a corrective action for any reason while under Morella's supervision.

Target replaced Morella with Hilary Jones, another Caucasian female. According to Anderson, he and Jones had a poor working relationship. For example, Anderson said that Jones would "embarrass" him by talking to him as if he were "an idiot" in front of his team. Anderson felt that Jones's conduct towards him undermined his leadership with his team, causing his team members to underperform on their assignments. And, according to Anderson, things got so bad that he complained about Jones to Cliff Townsend, the Store Director.

Morella said that after she assumed her new position with Human Resources, she continued to receive complaints about Anderson's excessive lunch and rest breaks. These additional complaints, Morella said, prompted her to investigate the complaints against Anderson.

Anderson recorded his working hours through use of a time clock. He would "punch in" his employee identification number at the start of the shift, before and after lunch break, and at the end of the shift. Target policy required employees to submit punch corrections if they did not punch in at the correct time or if the time-keeping system was not operating. Morella's investigation found two punch corrections by Anderson that appeared to violate company policy. Morella asked Gary Alexander, an African American male and Executive Team Lead of Asset Protection, to investigate Anderson's two punch corrections and review all of Anderson's time punches for the thirty days prior to the punch corrections at issue.

It was part of Alexander's job to review employee punch corrections and investigate potential punch-correction violations. Alexander reviewed Anderson's time punches, his punch

corrections, and the store's security video footage. The footage confirmed that during two shifts—February 26, 2018, and March 12, 2018—Anderson took longer breaks than allowed, and then later concealed his prolonged breaks by submitting fraudulent punch corrections. Alexander concluded that Anderson had violated Target's meal-break policy, falsified company records, and committed time theft by submitting fraudulent punch corrections.

On March 21, 2018, Morella and Jones asked Anderson about the punch corrections that appeared to violate company policy. Anderson did not deny the false punch corrections, and he told them that he was confused about the whole matter. On March 23, Townsend, Morella, and Jones met with Anderson and asked him for an explanation of the false punch corrections. Anderson said that he could not remember what happened on those days. On March 26, Anderson's employment was terminated at a meeting with Townsend, Morella, and Jones present. At the time, Anderson was 60 years old.

Following the meeting, Morella said to Anderson: "I bet you wish you had retired now." Anderson received a separation notice that confirmed his termination of employment and stated that the reasons for his termination were "[v]iolation of company policy" and "falsifying company documentation." Anderson neither denied the results of Alexander's investigation nor explained why he submitted false punch corrections.

Anderson sued Target in federal court, bringing claims under federal law for gender, race, and age discrimination. The district court granted summary judgment to Target, and Anderson timely appealed.

## II.

### A. Standard of Review

"We review the district court's grant of summary judgment de novo." *Romans v. Mich. Dep't of Hum. Servs.*, 668 F.3d 826, 835 (6th Cir. 2012). A defendant moving for summary judgment must demonstrate the "absence of a genuine issue of material fact" in all essential elements of the plaintiff's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). We draw all reasonable inferences in favor of the plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). And unless the plaintiff "show[s] specific facts that reveal a genuine issue for trial," *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014), the defendant is entitled to summary judgment, *Catrett*, 477 U.S. at 322–23.

### B. Evidentiary Issues

We start first with Anderson's evidentiary challenges. Over Anderson's objection, the district court deemed several facts as admitted from Target's statement of undisputed facts. On appeal, Anderson challenges the district court's rulings on these facts. The district court's rulings with regard to these facts are evidentiary rulings, and as such, we review them for an abuse of discretion. *See Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006). "A district court abuses its discretion when it relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Id.* (citation omitted). We conclude that the district court did not abuse its discretion by deeming these facts as admitted.

Start with Fact 32 and Fact 33. According to these statements of fact, two African American employees complained to Morella about Anderson's taking prolonged breaks and lunches. Anderson denied both facts, referring to a paragraph from his own affidavit, and asserting

that Morella mentioned complaints only from Caucasian employees. The district court deemed these facts as admitted for two reasons. First, Anderson's denial did not refute Target's statements of fact that Morella received complaints from other employees. And second, Anderson relied on deposition testimony not in the record.

The paragraph that Anderson relies on from his affidavit does not deny, refute, or even address the complaints from African American employees about Anderson's prolonged breaks and lunches. Rather, it relates to complaints from Caucasian employees that Anderson gave the hardest jobs to them. Furthermore, in violation of the local rules, Anderson does not provide a specific citation to Morella's deposition. *See* Local Rule 56.1(b) ("Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute."). Therefore, in deeming Fact 32 and Fact 33 as admitted, the district court did not abuse its discretion.

We turn next to Fact 35, which asserted that Morella, while not initially confronting Anderson about the complaints regarding his prolonged breaks, decided to address the issue after she received more complaints. Anderson denied this fact, stating that Morella testified that she confronted Anderson about the complaints only after the security video was reviewed. The district court deemed Fact 35 as admitted because Anderson's response was unresponsive to Target's assertion of fact, and Anderson relied on deposition testimony not in the record.

We find no error in the district court's ruling. Morella testified that the continued complaints about Anderson's prolonged breaks and lunches prompted her to address the issue by investigating the complaints, not to confront Anderson about them. Because Anderson's denial does not refute Morella's actions in addressing the complaints of Anderson's prolonged breaks, the district court rightly deemed the fact as admitted.

We turn to Fact 40. This statement of fact asserted that because two punch corrections by Anderson appeared to violate company policy, Target's investigation of Anderson's prolonged breaks focused on whether he had falsified company documentation. Anderson denied this fact, asserting that "Morella's intent to discriminatorily terminate the Plaintiff" caused the investigation. The district court deemed this fact as admitted because Anderson's denial did not refute the assertion and it contained a legal conclusion that made the objection improper.

We find no error in the district court's ruling. Anderson's denial does not refute the fact of the investigation, but asserts only that Morella's discriminatory intent caused the investigation. But whether Morella's discriminatory intent caused the investigation does not refute the fact of the investigation's occurrence or that the investigation turned to whether Anderson had falsified company documentation. Therefore, the district court did not abuse its discretion by deeming Fact 40 as admitted.

That takes us to Fact 57. This statement of fact asserted that Townsend, an African American male, summoned Anderson to his office to question him about his punch corrections. It also asserted that Anderson could not explain the punch corrections because he could not remember. Relying on his own affidavit, Anderson denied this statement of fact, arguing that because Townsend is a Caucasian male, the entire statement of fact is false. The district court deemed this fact as admitted because Anderson's denial did not attempt to refute any other assertion of fact in the statement. We agree with the district court. Even if Anderson's denial refuted Target's assertion that Townsend is an African American male, it does not follow that this denial refuted Target's description of what occurred during Anderson's visit to Townsend's office. Therefore, the district court did not abuse its discretion by deeming Fact 57 as admitted.

6

That leaves Fact 60. This statement of fact asserted that Jones was neither involved in the investigation of Anderson's prolonged breaks nor in the decision to terminate Anderson's employment. The district court deemed this fact as admitted because Anderson relied on deposition testimony not before the court. However, even if Anderson's denial properly refuted Fact 60, it is immaterial because the outcome of this case does not depend on this statement of fact. *See 1704 Farmington v. City of Memphis*, 437 F. App'x 387, 390 (6th Cir. 2011) (finding that the district court did not abuse its discretion because the challenged statements of fact did not "command a different disposition of the case"). Therefore, the district court did not abuse its discretion by deeming this fact as admitted.

In sum, the district court did not abuse its discretion by deeming any of these facts as admitted.

## C. Gender Discrimination

Anderson claims that Target discriminated against him because of his gender in violation of Title VII. Because Anderson's gender discrimination claim relies on indirect evidence of discrimination, we apply the *McDonnell Douglas* burden-shifting framework. *See Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 390 (6th Cir. 2009); *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020). The initial burden is on Anderson to establish his prima facie case for gender discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Anderson establishes his prima facie case, the burden shifts to Target to offer a legitimate, nondiscriminatory reason for Anderson's termination. *See id.* If Target offers a legitimate reason, the burden shifts back to Anderson to show that the proffered reason was pretext for discrimination. *See id.* at 804.

7

To establish his prima facie case of discrimination, Anderson must show that he was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and (4) replaced by a person outside the protected class or treated differently than similarly situated . . . employees." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016). For the fourth prong, he "must show that the defendant treated minority employees who were similarly situated to the plaintiff more favorably than he was treated." *MacEachern v. Quicken Loans, Inc.*, No. 17-1005, 2017 WL 5466656, at \*3 (6th Cir. Oct. 17, 2017) (citing *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003)).

Here, Target contests only the fourth element—that Target treated Anderson differently from a similarly situated female employee. To qualify as similarly situated, the comparator employee "must be similar in all of the *relevant* aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quotation marks omitted). The relevant aspects usually include whether the comparator employees had the same supervisor, worked under the same standards, and engaged in the same conduct as the plaintiff. *Id.*

The district court concluded that Anderson's proffered comparator female employee, Brenda Holliday-Lewis, was not similarly situated to Anderson because the two did not engage in the "same relevant conduct." The district court explained that Anderson failed to establish that Holliday-Lewis received complaints similar to those that Anderson received, or that Holliday-Lewis submitted fraudulent punch corrections. "Without this evidence establishing that Ms. Holliday-Lewis engaged in similar conduct yet received different treatment, the Court has no marker by which to gauge [Target's] conduct." We agree with the district court.

On appeal, Anderson points out that Maria McGhee, a former Target "Human Resources Executive," said that she saw Holliday-Lewis fixing time punches to comply with Target's meal-

break policy. But Anderson does not explain how Holliday-Lewis's correcting of time punches shows that she was accused of taking prolonged breaks as Anderson was, or that Target investigated her for prolonged breaks that later turned up evidence of fraudulent punch corrections. Devoid of facts that show similar complaints about Holliday-Lewis and a similar investigation of her, the district court rightly concluded that Anderson "failed to establish that Ms. Holliday-Lewis is an appropriate comparator."

Anderson also points to four other Target employees whom Target terminated for fraudulent punch corrections as similarly situated comparators to Anderson. But these employees cannot be relevant comparators simply because Target terminated their employment for fraudulent punch corrections. For these comparator employees to be relevant, Anderson had to show that Target treated them more favorably than they treated Anderson. But he cannot do so because Target terminated their employment just as Target terminated Anderson's employment.

Therefore, Anderson failed to establish his prima facie case for reverse gender discrimination, and we need not address his claims that Target's reasons for discharging him were pretextual.

### D. Racial Discrimination

Anderson claims that Target discriminated against him because of his race in violation of Title VII. On appeal, Anderson's argument claiming racial discrimination relies only on direct evidence. Direct evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by" unlawful discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). Indeed, the proffered direct evidence must "compel[] the conclusion that unlawful discrimination was at least a

motivating factor in the employer's actions." *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) (quotation marks omitted).

Anderson offers as direct evidence Morella's comment from 2016, in which she told Anderson that she would be disgusted if her daughters dated African American men. The district court found that the lapse of time between that comment and Anderson's termination of employment in 2018 cut against its probative value as direct evidence of racial animus. The district court also found that the comment related to "hypothetical social relationships" that required several inferences to establish the comment as direct evidence of unlawful discrimination in the termination of Anderson's employment.

We agree with the district court. "Isolated and ambiguous comments are insufficient to support a finding of direct discrimination." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 239 (6th Cir. 2005). Morella's alleged comment was isolated from the events that led to Anderson's termination of employment by time and context. Indeed, it would require several inferences over the course of several years and across varying contexts to conclude that it played even a motivating factor in Target's decision to terminate Anderson's employment. This the direct evidence standard does not permit. *See, e.g.*, *Igwe v. Salvation Army*, 790 F. App'x 28, 34 (6th Cir. 2019) (finding that the employer's comments did not relate to the issues that led to the adverse employment action). Therefore, Morella's alleged comment does not provide sufficient direct evidence of racial discrimination.

On appeal, Anderson argues that the district court's analysis was too narrow in its examination of Anderson's proffered evidence. Anderson argues that the district court erred by deeming Morella's dating comment to have no probative value or relevance. But Anderson misunderstands the district court's conclusion, which was that Morella's comment had *little*

probative value *as* direct evidence of unlawful discrimination, not that it lacked any probative value at all or that it was inadmissible. In fact, the district court considered Morella's comment and provided sound reasons for its conclusion that the comment did not provide sufficient direct evidence of unlawful discrimination.

On appeal, Anderson emphasizes four other facts as direct evidence of unlawful discrimination. First, he says that Morella directed him to assign the hard jobs to African American employees. Second, he points to Morella's "unsubstantiated" claim that she received complaints about Anderson's taking prolonged breaks. Third, he points to Morella's asking him not to address another employee's complaint against Anderson that he had sexually harassed the employee. Fourth, he offers Jones's claim that she did not know the race of the employee who replaced Anderson after Target terminated Anderson's employment. But these facts fail to qualify as direct evidence.

The first fact fails for the same reason that Morella's 2016 comment about her daughters' dating African American men fails—it was too isolated by time and context. The remaining facts fail because they do not even suggest racial animus on the part of Morella. *See Worthy v. Mich. Bell Tel. Co.*, 472 F. App'x 342, 348 (6th Cir. 2012) (finding that statements "not clearly reflective" of racial bias failed to qualify as direct evidence of racial bias). The district court concluded as much, and Anderson does not provide any reasons that overcome that conclusion. Therefore, Anderson has failed to establish sufficient direct evidence of racial discrimination.

## E. Age Discrimination

Anderson's final claim is that Target discriminated against him because of his age, in violation of the ADEA. The ADEA prohibits terminating an individual's employment "because of such individual's age." 29 U.S.C. § 623(a)(1). "This requires showing that age was *the*

determinative reason they were terminated . . . ." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021); *see also Gross v FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009) ("A plaintiff must prove by a preponderance of the evidence . . . that age was the 'but for' cause of the challenged employer decision."). The plaintiff can use either direct or indirect evidence for his ADEA claim. *See Tennial*, 840 F.3d at 305. Anderson raises two arguments on appeal, one that uses direct evidence and the other that uses indirect evidence.

Anderson's direct evidence argument fails because he did not raise it before the district court. Forfeiture is the "failure to make the timely assertion of a right." *United States v. Olano*, 507 U.S. 725, 733 (1993). Parties must raise their arguments before the district court to preserve them for appeal. *See Greer v. United States*, 938 F.3d 766, 770 (6th Cir. 2019). Because Anderson raises his direct evidence argument for the first time on appeal, he forfeited that argument.

While it could be argued that a failure to raise a related argument of the same claim with the same factual basis does not necessarily amount to a forfeiture, *see, e.g.*, *Roberts v. Coffee County*, 826 F. App'x 549, 555 n.4 (6th Cir. 2020), that is not the case here. An ADEA claim using direct evidence requires different elements and a different analysis from an ADEA claim using indirect evidence. *See Pelcha*, 988 F.3d at 324–25 (contrasting the elements of both types of ADEA claims). Therefore, because the ADEA claim using direct evidence is not merely an "offshoot" of the ADEA claim using indirect evidence, Anderson forfeited the direct evidence argument that he raises now. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 444–45 (6th Cir. 2021) (deeming an argument as unpreserved and forfeited because, although the claim had the same factual basis as the preserved claims, it involved different elements).

Even if Anderson did not forfeit his direct evidence argument, it still fails on the merits. His argument relies on two pieces evidence: First, that Jones, as a decisionmaker involved in

terminating Anderson's employment, told another employee that she planned to replace Anderson with a younger person; and second, that at the termination meeting, Morella, also a decisionmaker involved in terminating Anderson's employment, told Anderson, "I bet you wish you had retired now." Neither of these constitutes sufficient direct evidence.

We start with Jones's statement. Even granting Anderson's contention that Jones involved herself in the decision to terminate Anderson, he fails to show that Jones's statement related to the "decisional process" that resulted in Anderson's termination of employment. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (citation omitted). Anderson does not offer any evidence that Jones made this statement during the investigation of Anderson's punch corrections, the several meetings that Jones and others had with Anderson related to his punch corrections, or during the decisional process that resulted in Anderson's termination of employment. Therefore, Jones's statement, wholly disconnected from these events, cannot constitute direct evidence. *See Geiger v. Tower Auto.*, 579 F.3d 614, 621–22 (6th Cir. 2009) (finding no direct evidence in statements by supervisor that were not connected to the decision to terminate the plaintiff's employment).

Morella's statement fares no better because it alone cannot prove that age was "*the* determinative reason*" that Target terminated Anderson. *Pelcha*, 988 F.3d at 324. Indeed, several facts cut against a "but-for" causal connection between Anderson's age and his termination. *See Gross*, 557 U.S. at 178. First, as the district court pointed out, Alexander, not Morella, conducted the investigation that ultimately found that Anderson submitted fraudulent punch corrections. Second, Townsend, Target's Store Director, was involved in the termination decision. Notably, Anderson has not set forth any facts that suggest age-bias on either Alexander's or Townsend's part. Third and finally, the fact that Anderson committed a fireable offense by submitting

13

fraudulent time corrections—a fact that Anderson neither denies nor rebuts—indicates that Target would have terminated his employment absent Morella's statement. Morella's lone statement fails to establish age discrimination as *the* determinative factor in Anderson's termination of employment. Therefore, Anderson's direct evidence argument is without merit.

Anderson's indirect evidence argument is without merit too. We analyze ADEA claims using indirect evidence under the *McDonnell Douglas* burden-shifting framework. *See Pelcha*, 988 F.3d at 324–25. Still, the ultimate burden of persuasion in an ADEA claim remains with the plaintiff. *See Gross*, 557 U.S. at 177. Anderson has established his prima facie case because Target replaced Anderson with an employee who is in his thirties. Yet Target offered legitimate, nondiscriminatory reasons for firing Anderson—namely, that he was fired for "[v]iolation of company policy" and "falsifying company documentation."

That leaves Anderson with the burden to show that Target's reasons were pretext for age discrimination. To show pretext, the plaintiff must show that the employer's stated reason "had no basis in fact, did not actually motivate the defendant's challenged conduct, or was insufficient to motivate the defendant's challenged conduct." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 268 (6th Cir. 2010).

Anderson has failed to show that Target's stated reason was pretext for age discrimination. As noted, Anderson does not deny or rebut the fact that he submitted fraudulent punch corrections, the very basis for Target's decision to terminate Anderson's employment. As to actual motivation, Anderson can rely only on statements by Jones and Morella that are either unrelated to the termination decision, or insufficient to show that age was the determinative reason for Target's termination decision. Finally, as to insufficient motivation, Target company policy states that Anderson's conduct can result in termination of employment. And Anderson fails to point to any

employee who did what Anderson did but retained his or her employment. In fact, Target terminated the employees whom Anderson offers as comparators *because* they submitted fraudulent punch corrections. As the district court noted, this argument gets it "backwards." Therefore, Anderson failed to establish sufficient direct or indirect evidence for his age discrimination claim.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.